FILED

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 AUG -6 PM 4: 16

U.S. DISTRICT COURT
N.D. OF ALABAMA

JACQUELINE D. HENDERSON,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
WASHINGTON NATIONAL INSURANCE　　　　)　　Civil Action No.: _____
COMPANY, CONSECO SERVICES, L.L.C.,　 )
THOMAS B. HANEY; and TRUSTMARK　　　　)　　　　CV-04-B-2433-S
NATIONAL BANK,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)

## NOTICE OF REMOVAL

**COME NOW** defendants, Washington National Insurance Company ("WNIC")
and Conseco Services, L.L.C. ("Conseco") (collectively "defendants"), by and through
their counsel of record, and pursuant to 28 U.S.C. § 1441, as amended, hereby give
notice of the removal of this action to the United States District Court for the Northern
District of Alabama, Southern Division. As grounds for this removal, defendants state
as follows:

　　　　　1.　　　On or about June 28, 2004 Jacqueline D. Henderson ("Plaintiff")
commenced a civil action against defendants WNIC, Conseco Services, L.L.C.,
Trustmark National Bank, Thomas B. Haney, and various fictitious defendants, in the
Alabama Circuit Court of Jefferson County, now pending as Civil Action No. CV-
0403996. The Alabama Circuit Court of Jefferson County is a state court within this
judicial district and division.

2.     A copy of the Alabama Circuit Court of Jefferson County file is attached hereto as Exhibit A.  There have been no other process, pleadings or orders served to date other than those contained in Exhibit A.

3.     This notice of removal is timely pursuant to 28 U.S.C. § 1446(b), which provides in pertinent part as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

4.     Thus, this notice of removal is timely because it is filed within thirty (30) days of the first service of the Summons and Complaint, and because this action was commenced less than one (1) year ago.

5.     This case is properly removable pursuant to 28 U.S.C. § 1441, which provides in pertinent part as follows:

> (a)     Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.  For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

> (b)     Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship or residence of the parties.  Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

## I.    DIVERSITY OF CITIZENSHIP

6.    This action is properly removable under 28 U.S.C. § 1441(a) and (b) because the United States District Court has original jurisdiction of this case under 28 U.S.C. § 1332(a), as amended, which provides in pertinent part as follows:

> (a)    The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between --
>
> (1)    citizens of different States . . . .

7.    There is only one named plaintiff in this action.  Upon information and belief, plaintiff Jacqueline D. Henderson is a resident citizen of the State of Alabama. (Complaint, ¶ 1).

8.    There are four named defendants in this action.  Defendant WNIC is now, and was at the time of the commencement of this action, an insurance company organized and existing under the laws of the State of Illinois with its principal place of business in the State of Illinois.

9.    Defendant Conseco is now, and was at the time of the commencement of this action, a company organized and existing under the laws of the State of Indiana with its principal place of business in the State of Indiana.

10.    Trustmark National Bank ("The Bank") is now, and was at the time of the commencement of this action, a company organized and existing under the laws of the State of Mississippi with its principal place of business in the State of Mississippi.

11.    Upon information and belief, defendant Thomas B. Haney ("Haney"), who has been fraudulently joined, is a resident citizen of Jefferson County, Alabama.

12.    Plaintiff has attempted to destroy diversity by fraudulently joining Haney, an Alabama defendant.  A defendant's "'right of removal cannot be defeated by a fraudulent joinder of a resident defendant.'" Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996) (quoting Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000), cert. den., 121 S. Ct. 381 (2000).

13.    Haney was fraudulently joined as a defendant to destroy diversity.  It is well-settled that the Court must disregard nominal or formal parties and determine jurisdiction based only upon the citizenship of the real parties to the controversy. Navarro Savings Ass'n v. Lee, 446 U.S. 458, 64 L. Ed. 2d 425 (1980).  Fraudulent joinder of a resident defendant exists if a plaintiff does not intend to prosecute the action against that defendant in good faith.  Wilson, 257 U.S. at 94; 66 L. Ed. at 147.  Such joinder, used as a device to prevent the defendant from exercising its right of removal, will not be treated as a legal obstacle to retention of the cause by the district court.  Id. at 98, 149; Bullock v. United Benefit Ins. Co., 165 F. Supp. 2d 1255, 1257 (M.D. Ala. 2001) ("When a defendant has been fraudulently joined, the court should disregard his or her citizenship for purposes of determining whether a case is removable based on diversity of citizenship.").

14.    On or about August 1, 1995, Plaintiff applied for health insurance coverage with WNIC.  Plaintiff claims that her monthly premiums were repeatedly raised beginning in July of 1996.  (Complaint, ¶ 11).  Plaintiff claims that these increases were based upon her individual claims experience and not upon the claims history of a group of insureds.  (Complaint, ¶ 9).

A.    **Plaintiff's Tort Claims Against the Non-Diverse Defendant Haney Are Barred by the Statute of Limitations.**

15.    The Complaint contains counts for fraud, fraudulent concealment, conspiracy, breach of fiduciary duty, and breach of contract. The limitations period for the fraud, conspiracy and breach of fiduciary duty claims is two (2) years. Ala. Code § 6-2-38 (1975). Alabama law further provides that the statute of limitations for fraud commences "once the fraud is readily discoverable or the potential plaintiff is on notice that a fraud may have been perpetrated." Kelly v. A.L. Williams Corp., 669 F. Supp. 1058, 1062 (N.D. Ala. 1986). The standard for accrual of fraud claims is objective, and the statute of limitations begins to run once facts are known or available to the plaintiff which would lead to the discovery of the fraud in the exercise of reasonable diligence. Ala. Code § 6-2-3 (1975); Boros v. Palmer, 472 So. 2d 1020, 1023 (Ala. 1985) ("[F]acts constituting the fraud are to be considered discovered when they ought to be discovered, when such facts come to knowledge as to provoke inquiry in a person of ordinary prudence, and which, if followed up, would lead to the discovery of the fraud."); Phillips v. Amoco Oil Co., 799 F. 2d 1464, 1469 (11th Cir. 1986) ("According to Alabama law, a fraud cause of action accrues, and the [two] year statute of limitations begins to run, at the discovery of the facts constituting the fraud. Such discovery occurs when the plaintiff should have discovered facts that would provoke a person of ordinary prudence to inquiry.").

16.    In addition, the limitations period for conspiracy "begins to run when the statutory period of limitation for the underlying tort begins to run." Spain v. Brown & Williamson Tobacco Corp., 872 So. 2d 101, 126 (Ala. 2003). Similarly, the limitations period for breach of fiduciary duty grounded in fraud begins to run when plaintiff is on

such notice that the fraud reasonably should have been discovered.    Gamble v. American Fidelity Life Ins. Co., 1998 WL 1171610, *5 (S.D. Ala. 1998).  Because the conspiracy and fiduciary duty claims in the present case are based on Plaintiff's underlying fraud claims, the limitations period for all three began to run at the same time.

17.    Moreover, it is the affirmative burden of the party alleging fraud to prove her lack of notice in order to toll the statute of limitations. Lampliter Dinner Theater, Inc. v. Liberty Mutual Ins. Co., 792 F. 2d 1036, 1043 (11th Cir. 1986) ("The burden was squarely on [plaintiff] to prove that it was unaware of facts that would lead a reasonable person to suspect fraud."); Johnson v. Shenandoah Life Ins. Co., 281 So. 2d 636, 642 (Ala. 1973) (Plaintiff must show what prevented discovery of the fraud before the bar of the statute of limitations was complete and must acquit himself of all knowledge of facts which ought to put him on inquiry.).

18.    Although Plaintiff cannot establish any evidence of fraud, if this Court finds that fraud does exist, which it does not, Plaintiff has the affirmative burden of proving that she lacked notice concerning an increase in premiums due to individual claims experience prior to June 28, 2002, two (2) years before Plaintiff filed her claims.

19.    Plaintiff admits in her complaint that her premiums rose sharply as early as 1996 and that she cancelled her coverage in 1999.  (Complaint, ¶ 14).  These increases put Plaintiff on notice as many as eight years ago, when her premiums first began to rise, "that a fraud may have been perpetrated." A.L. Williams Corp., 669 F. Supp. at 1062.  At the very latest, the statute of limitations on Plaintiff's fraud claims began to run in 1999, well more than two years prior to the filing of this lawsuit.

Accordingly, Plaintiff's fraud, conspiracy and breach of fiduciary duty[1] claims against Haney are time-barred and should not be considered for purposes of determining diversity jurisdiction.

**B.     Plaintiffs Do Not Assert a Breach of Contract Claim Against Non-Diverse Defendant Haney.**

20.     Plaintiff's count for breach of contract should also be disregarded for jurisdictional purposes.  Only WNIC, Conseco, and The Bank are named in the breach of contract count, which is proper since Haney (the only resident defendant) was not a party to Plaintiff's contract with WNIC.  Accordingly, Plaintiff's claim for breach of contract has no bearing on whether diversity jurisdiction exists.

**C.     Plaintiff's Claims Against Fictitious Parties Are to be Disregarded.**

21.     Plaintiff also alleges causes of action against fictitious defendants. Pursuant to 28 U.S.C. §1441(a), the citizenship of fictitious defendants must be disregarded, as they have been sued under fictitious names.

22.     Consequently, it is now evident that complete diversity of jurisdiction exists between the Plaintiff and the only properly-joined defendants, WNIC, Conseco, and The Bank.

---

[1] In addition to the fact that it is time-barred, Plaintiff's fiduciary duty claim should not be a factor in evaluating jurisdiction because no fiduciary relationship existed between Plaintiff and Haney.  A fiduciary relationship "may arise from the confidential relations of the parties or from the particular circumstances of the case."  King v. National Found. Life Ins. Co., 541 So. 2d 502, 505 (Ala. 1989) (quoting Ala. Code § 6-5-102 (1975)).  Typically, there is no confidential relationship which would rise to the level of a fiduciary relationship between an insurer and an insured.  See id.; Hardy v. Blue Cross and Blue Shield of Alabama, 585 So. 2d 29, 32 (Ala. 1991) (no confidential or fiduciary relationship existed between health insurer and insured).  No confidential relationship existed between Plaintiff and Haney that would permit the existence of a fiduciary relationship.  Accordingly, Haney has not breached any fiduciary relationship with Plaintiff and thus Plaintiff's fiduciary duty claim should be disregarded for purposes of determining diversity jurisdiction.

## II.    **AMOUNT IN CONTROVERSY**

23.    In her Complaint, Plaintiff asserts claims for fraud, fraudulent concealment, conspiracy, breach of fiduciary duty, and breach of contract. Plaintiff seeks compensatory and punitive damages, as well as costs.

24.    The amount in controversy in this action clearly exceeds the sum or value of $75,000.00 exclusive of interest and costs, notwithstanding the fact that the Complaint does not set forth the amount of damages claimed. It is well settled that an indeterminate complaint "does not show that the case is *not removable*. It simply does not comment on federal jurisdiction." Robinson v. Quality Ins. Co., 633 F. Supp. 572, 574 (S.D. Ala. 1986) (emphasis original). In such cases, the Court has the "duty to independently determine the propriety of jurisdiction." Id. at 575. Therefore, it is appropriate for the Court to review the allegations in the Complaint as well as the notice of removal to ascertain jurisdiction. In the instant case, it is clear that if the allegations of the Complaint are proven, the amount of controversy requirement of $75,000.00 will be satisfied.

25.    In her Complaint, Plaintiff seeks both compensatory and punitive damages. Nowhere in the Complaint does the Plaintiff limit her recovery to less than $75,000.00. Moreover, this case involves claims of fraud, fraudulent concealment, and conspiracy with accompanying requests for compensatory and punitive damages.

26.    As this Court is aware, compensatory damages in tort actions in Alabama have often resulted in substantial recoveries for mental anguish, emotional distress, and other similar harms, well exceeding the $75,000.00 required for diversity jurisdiction. Recent jury verdicts in Alabama reflect the potential magnitude of compensatory damages claims for mental and emotional distress arising from various allegations.

Verdicts well in excess of $75,000.00 have been rendered against corporate defendants, particularly out-of-state corporations, in such actions. See, e.g., Gallant v. Prudential Ins. Co. of Am., CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $430,000 in compensatory damages for alleged insurance fraud); Talent Tree Personnel Serv., Inc. v. Fleenor, 703 So. 2d 917, 922-23 (Ala. 1997) (awarding $300,000 in compensatory damages for alleged fraudulent misrepresentation); First Commercial Bank v. Spivey, 694 So. 2d 1316, 1326 (Ala. 1997) (awarding $450,000 in compensatory damages for emotional distress arising from the defendant's fraudulent conduct).

27.     Furthermore, it is well settled that punitive damages must be considered in any calculation in the amount in controversy. See, e.g., Holley Equip. Co. v. Credit Alliance Corp., 821 F.2d 1531, 1535 (11th Cir. 1987) ("[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, . . . unless it is apparent to a legal certainty that such cannot be recovered."); Swafford v. Transit Cas. Co., 486 F. Supp. 175, 177 (N.D. Ga. 1980) ("It is clear that in determining the jurisdictional amount in controversy, punitive damages are to be counted.") (citing Bell v. Preferred Life Assurance Soc., 320 U.S. 238 (1943)).  In many recent fraud cases in Alabama, foreign corporations, such as the ones involved in this case, have suffered punitive damages awards well in excess of $75,000.00. See, e.g., Johnson v. Mercury Fin. Co., CV-93-52, in the Circuit Court of Barbour County, Alabama, Clayton Division.    (Plaintiff, buyer of used cars, alleged that defendant fraudulently failed to disclose a $1,000 discount for which defendant purchased the non-recourse note.  Jury awarded $90,000 in compensatory damages, and $50,000,000 in

punitive damages.  The award of punitive damages was remitted to $2,000,000.); Key v. Prudential Ins. Co., et al., CV-93-479, in the Circuit Court of Marshall County, Alabama (August 28, 1995) (The plaintiff alleged that the insurance agent misrepresented that no additional premium payments would be required.  Jury awarded $25,000,000 in punitive damages.); Parham v. Foremost Ins. Co., CV-94-44, in the Circuit Court of Bullock County, Alabama (June 7, 1995) (Plaintiffs, purchasers of a mobile home, alleged that the seller/agent misrepresented material facts about homeowners insurance purchased by plaintiffs.  Jury found defendant insurance company liable and awarded $6,000 in compensatory damages, and $7,500,000 in punitive damages); Gallant, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $33,000,000 in punitive damages); Ford Motor Co. v. Sperau, 708 So. 2d 111, 124 (Ala. 1997) (awarding $1,792,000 in punitive damages).

28.    Given the massive amount of compensatory and punitive damages potentially recoverable in cases such as this one as discussed above, the amount in controversy exceeds $75,000.00.   Consequently, this case is properly removable because the matter in controversy exceeds the sum or value of $75,000.00.

29.    This case is a civil action within the meaning of the Acts of Congress relating to the removal of causes.

30.    The defendants have heretofore sought no similar relief.

31.    All non-fraudulently joined defendants have joined in this Notice of Removal as evidenced by Exhibit B.

32.    A copy of this notice is being filed with the Clerk of the Circuit Court of Jefferson County, as provided under 28 U.S.C. § 1446. The defendants are also giving prompt written notice to the Plaintiff of the filing of this notice of removal.

**WHEREFORE**, defendants WNIC and Conseco request that this Court take jurisdiction of this action and issue all necessary orders and process to remove this action from the Circuit Court of Jefferson County, Alabama to the United States District Court for the Northern District of Alabama, Southern Division.

DATED this 6th day of August, 2004.

Paul P. Bolus (BOL024)
Gary L. Howard (HOW044)
D. Brian O'Dell (ODE005)
Attorneys for Washington National Insurance
Company and Conseco Services, L.L.C.

**OF COUNSEL:**
**BURR & FORMAN LLP**
3100 SouthTrust Tower
420 North Twentieth Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile:  (205) 458-5100

1265105                                                11

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon the following by placing same in the U.S. Mail, postage prepaid and properly addressed this _6th_ day of August, 2004:

Steve Olen, Esq.
S. Russ Copeland, Esq.
Olen, Nicholas & Copeland, P.C.
Post Office Box 1826
Mobile, Alabama 36633
(251) 438-6957

I. David Cherniak
David C. Hannan
Johnstone, Adams, Bailey, Gordon &
    Harris, L.L.C.
P.O. Box 1988
Mobile, Alabama 36633
(334)-432-7682

Thomas B. Haney, Jr.
796 Meadow Lake Farms
Calera, Alabama 35040

OF COUNSEL

```
| AVSO351                                                    CV 2004 003996.00
|
|                                               JUDGE: CARYL PENNEY PRIVET
|------------------------------------------------------------------------
|                        ALABAMA JUDICIAL DATA CENTER
|                          CASE ACTION SUMMARY
|                            CIRCUIT CIVIL
|------------------------------------------------------------------------
|   IN THE CIRCUIT  COURT OF JEFFERSON     COUNTY
|
|   JACQUELINE D HENDERSON  VS WASHINGTON NATIONAL INS CO ET AL
|   FILED:  06/28/2004 TYPE: BAD FAITH/FRAUD/MISR TYPE TRIAL: JURY    TRACK:
|************************************************************************
|  DATE1:            CA:                    CA DATE:
|  DATE2:            AMT:            $.00  PAYMENT:
|  DATE3:
|************************************************************************
|  PLAINTIFF  001: HENDERSON JACQUELINE D
|                                     ATTORNEY: OLEN STEPHEN C
|                                     OLEO01    COPELAND STEPHEN R
|                    , AL  00000-0000           RAY ROYCE ALLEN III
|                   PHONE: (205)000-0000
|  ENTERED:  07/07/2004 ISSUED:             TYPE:
|  SERVED:             ANSWERED:             JUDGEMENT:
|------------------------------------------------------------------------
|  DEFENDANT  001: WASHINGTON NATIONAL INSURANCE CO
|                  303 NORTH MAIN           ATTORNEY: *** PRO SE ***
|
|                  ROCKFORD, IL  61101-0000
|                  PHONE: (205)000-0000
|  ENTERED:  07/07/2004 ISSUED:  07/08/2004 TYPE:    CERTIFIED
|  SERVED: 7-12-04    ANSWERED:             JUDGEMENT:
|------------------------------------------------------------------------
|  DEFENDANT  002: CONSECO SERVICES
|                  303 NORTH MAIN           ATTORNEY: *** PRO SE ***
|
|                  ROCKFORD, IL  61101-0000
|                  PHONE: (205)000-0000
|  ENTERED:  07/07/2004 ISSUED:  07/08/2004 TYPE:    CERTIFIED
|  SERVED:             ANSWERED:             JUDGEMENT:
|------------------------------------------------------------------------
|  DEFENDANT  003: TRUSTMARK NATIONAL BANK
|                  P O BOX 291              ATTORNEY: *** PRO SE ***
|                                           I. David Cherniak
|                  JACKSON, MS  39205-0291  David C. Hannan
|                  PHONE: (205)000-0000
|  ENTERED:  07/07/2004 ISSUED:  07/08/2004 TYPE:    CERTIFIED
|  SERVED: 7-12-04    ANSWERED: 7-29-04     JUDGEMENT:
|------------------------------------------------------------------------
|  DEFENDANT  004: HANEY THOMAS B JR
|                  796 MEADOW LAKE FARMS     ATTORNEY: *** PRO SE ***
|
|                  CALERA, AL  35040-0000
|                  PHONE: (205)000-0000
|  ENTERED:  07/07/2004 ISSUED:            TYPE:
|  SERVED: 7-11-04    ANSWERED:             JUDGEMENT:
|------------------------------------------------------------------------
|     SUMMONS & COMPLAINT -INTGS-RQ PROD
|
|
|
|  7-14-04 SaC returned on D0021 (yd)
|
|------|-----------------------------------------------------------------
|------|-----------------------------------------------------------------
|------|-----------------------------------------------------------------
ROA    07/07/2004                              CV 2004 003996.00
```



```
-------------------------------------------------------------------------
                    ALABAMA JUDICIAL DATA CENTER
                 CASE ACTION SUMMARY CONTINUATION
                          CIRCUIT CIVIL
-------------------------------------------------------------------------
  IN THE CIRCUIT  COURT OF JEFFERSON    COUNTY                          |

  JACQUELINE D HENDERSON    VS WASHINGTON NATIONAL INS CO ET AL
  FILED:  06/28/2004 TYPE:  BAD FAITH/FRAUD/MISR TYPE TRIAL:  JURY    TRACK

*********** *************************************************************
  DATE1:              CA:                CA DATE:
  DATE2:              AMT:         $.00  PAYMENT:
*********** *************************************************************
```

RDA    07/07/2004

AVS0353                    )        ALABAMA JUDICIAL DA  )CENTER
                                        FEE SHEET
                                     CIRCUIT CIVIL              CASE:CV 2004 003996.
-------------------------------------------------------------------------------
| IN THE CIRCUIT  COURT OF JEFFERSON     COUNTY    JUDGE: CARYL PENNEY PRIVETT
-------------------------------------------------------------------------------
|   JACQUELINE D HENDERSON   VS WASHINGTON NATIONAL INS CO ET AL
|   PATTY:GLEN STEPHEN C                 DATTY:*** PRO SE ***
|   P O BOX 1826
|
|        MOBILE, AL  36633
-------------------------------------------------------------------------------

| CIVIL FEE  SUMMARY|DATE|DATE|DATE|DATE|CONTINUATION      |DATE|DATE|DATE|DATE

|DOCKET FILING FEE| AMT| AMT| AMT| AMT|                    | AMT| AMT| AMT| AMT
| SM(<)      $51.00|____|____|____|____|OTHER SERVICES      |____|____|____|____
| SM(>)     $125.00|____|____|____|____|COMMISSION ON SALE  |____|____|____|____
| DIST      $216.00|____|____|____|____|JUDGEMENTS          |____|____|____|____
| CIRC      $206.00|$142|____|____|____|POST JUDGEMENT FEE  |____|____|____|____
| JU/CS      $99.00|____|____|____|____|  ATTACHMENTS   $17 |____|____|____|____
|LAW LIBRARY TAX  |2.00|____|____|____|  GARNISHMENTS  $17 |____|____|____|____
|JURY DEMAND   $51| $51|____|____|____|  EXECUTION      $9 |____|____|____|____
|SERVICE FEES     |____|____|____|____|LOWER COURT COSTS   |____|____|____|____
|EACH DEF OVER $10|____|____|____|____|  OTHER             |____|____|____|____
|                 |    |____|____|____|  COURT ADM FUND    |____|____|____|____
| CERT MAIL_____|____|____|____|____|  FAMILY COURT   $4 |____|____|____|____
| SUBPOENA EACH $8|____|____|____|____|  SHERIFF'S FEE $10 |____|____|____|____
|ABND VEH   $42.00|____|____|____|____|--------------------|____|____|____|____
|WORKERS          |____|____|____|    |      TOTAL COSTS|____|____|____|____
| COMP     $154.00|____|____|____|    |
-------------------------------------------------------------------------------

| CASH RECEIPTS/FROM           | DATE      | RECEIPT  | AMOUNT    |
|                              | RECEIVED  | NUMBER   | RECEIVED  | GARNISHEE
-------------------------------------------------------------------------------
|                              |        |        |        |
| .                            |        |        |        |
|                              |        |        |        |
|                              |        |        |        |
|                              |        |        |        |
|                              |        |        |        |
|                              |        |        |        |
|                              |        |        |        |
|                              |        |        |        |
|                              |        |        |        |
|                              |        |        |        |
|                              |        |        |        |
|                              |        |        |        |
|                              |        |        |        |
-------------------------------------------------------------------------------
| DISBURSEMENTS PAID TO                  | DATE PAID | CHECK NO | AMOUNT PAI
-------------------------------------------------------------------------------
|                                        |        |        |        |
|                                        |        |        |        |
|                                        |        |        |        |
|                                        |        |        |        |
|                                        |        |        |        |
|                                        |        |        |        |
-------------------------------------------------------------------------------
ROA    07/07/2004

| State of Alabama<br>Unified Judicial System | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number<br>C V 0 4 0 3 9 9 6 |
|---|---|---|
| Form ARCivP-93   Rev. 5/99 | | Date of Filing:      Judge Code:<br>Month    Day    Year |

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF _____ JEFFERSON _____, ALABAMA

*(Name of County)*

JACQUELINE D. HENDERSON _____ v. _____ WASHINGTON NATIONAL INSURANCE COMPANY,
            **Plaintiff**                             et al.        **Defendant**

**First Plaintiff**    ☐ Business    ☒ Individual      **First Defendant**    ☒ Business    ☐ Individual
                     ☐ Government    ☐ Other                              ☐ Government    ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box *(check only one)* that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☒ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PROPERTY INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Wnt of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellanous Circuit Civil Case

**ORIGIN** *(check one):*    F ☒ INITIAL FILING      A ☐ APPEAL FROM      O ☐ OTHER:
                                           DISTRICT COURT            _____
                      R ☐ REMANDED      T ☐ TRANSFERRED FROM<br>                                                   OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?**   ☒ YES   ☐ NO    **Note:** Checking "Yes" **does not** constitute a demand for a jury trial. (See **Rules 38 and 39, Ala.R.Civ.P,** for procedure)

**RELIEF REQUESTED:**    ☒ MONETARY AWARD REQUESTED      ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
C O P O 1 8     Date   6/25/04        Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**    ☐ YES   ☐ NO   ☒ UNDECIDED

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA**

| | |
|---|---|
| JACQUELINE D. HENDERSON, | * |
| Plaintiff, | * |
| v. | * |
| WASHINGTON NATIONAL | * |
| INSURANCE COMPANY; | |
| CONSECO SERVICES, L.L.C.; | * |
| THOMAS B. HANEY, JR.; TRUSTMARK | |
| NATIONAL BANK; and A, B and C, | * |
| each being individuals or other legal | |
| entities hereinafter described, whose | * |
| identities are not presently known to | |
| the Plaintiff and who are now or have | * |
| been Trustee of the Washington | |
| National Major Medical Trust at any | * |
| time from January 1, 1995 through | |
| the present, and whose actions | * |
| caused or contributed to Plaintiff's | |
| damages, | * |
| Defendants. | * |

**C V 0 4 0 3 9 9 6**

CASE NO._____

**FILED IN OFFICE**

**JUN 2 8 2004**

**ANNE-MARIE ADAMS**
Clerk

**<u>COMPLAINT</u>**

Plaintiff Jacqueline D. Henderson files her Complaint against Defendants Washington

National Insurance Company, Conseco Services, L.L.C., Thomas B. Haney, Jr., Trustmark

National Bank and fictitious parties A, B and C as follows:

-1-

## I.    PARTIES

1.    Plaintiff Jacqueline D. Henderson is an adult resident citizen of Jefferson County, Alabama.

2.    Defendant Washington National Insurance Company ("Washington National") has done business by agent in Jefferson County, Alabama at all times material hereto, and is or was engaged in the business of marketing and selling health insurance policies to residents of Jefferson County, Alabama and the State of Alabama.

3.    Defendant Conseco Services, L.L.C. ("Conseco") purchased or acquired Washington National and is a successor in interest to Washington National.

4.    Defendant Thomas B. Haney, Jr. is an adult resident citizen of Jefferson County, Alabama who, while acting as an agent, servant, representative or employee of Washington National, Conseco and/or Trustmark National Bank, sold a health insurance policy to Plaintiff. Defendant Haney was authorized by Defendants Washington National, Conseco and/or Trustmark National Bank to solicit applications for health insurance policies and to service such policies, and acted at all times described herein within the line and scope of his agency, representation and/or employment for and/or with said Defendants.

5.    Defendant Trustmark National Bank ("Trustmark") is an entity organized under the laws of a state other than Alabama and with its principal place of business in the State of Mississippi. At all times material hereto, Defendant Trustmark has served as trustee of The Washington National Major Medical Trust, and has held, and now holds, the "group" health

insurance policy which covered Plaintiff.  The Washington National Major Medical Trust is used as an integral part of the scheme to defraud policyholders, including Plaintiff.

6.      Defendants A, B and C are individuals or legal entities whose identities are not presently known to the Plaintiff and who are now or have been Trustee of The Washington National Major Medical Trust at any time from January 1, 1995 through the present, and whose actions caused or contributed to Plaintiff's damages.  Defendants A, B and C, as Trustee of The Washington National Major Medical Trust, have held, or now hold, the "group" health insurance policy which covered Plaintiff.

7.      Plaintiff asserts only Alabama state law claims in this Complaint and makes no claims herein under the United States Constitution or any federal law.  Additionally, none of the Plaintiff's Alabama state law claims are preempted by any federal law.

## II.    FACTUAL ALLEGATIONS

8.      On or about August 1, 1995, Plaintiff made application for and purchased a "group" health insurance policy from Defendants.

9.      As part of the sales presentation made to Plaintiff, Defendants represented to Plaintiff that the insurance being sold to Plaintiff was a "group" policy and that the premiums charged to Plaintiff were the same as those charged to the "group."  However, the Defendants suppressed or concealed from Plaintiff the material facts that in the event any of the insureds under Plaintiff's policy suffered significant illness or injury, Plaintiff would be placed in a tier or category with other policyholders who suffered significant illness or injury, and Plaintiff's premiums would be increased to exorbitant amounts that would make the policy unaffordable to

-3-

Plaintiff. The Defendants also suppressed or concealed the material fact that they charged entry level policyholders and policyholders with small or no claims a lower premium for the same coverage. The Defendants further suppressed or concealed the material fact that premiums would or may be increased based upon factors other than bona fide group claims experience. In addition, the Defendants further suppressed or concealed the material facts that Defendants decided to cease marketing and selling this "group" health insurance policy, thereby adversely affecting the makeup of the group and causing it to begin a "downward spiral," which in turn caused the Defendants to increase Plaintiff's premiums to exorbitant and unreasonable amounts.

10.    Plaintiff was sold this "group" health insurance by Defendants, namely Group Major Medical Expense Coverage, and obtained coverage effective as of September 1995, with an agreed upon premium for the policy of $890.04 every three (3) months for such coverage and a $500.00 deductible.

11.    In or around July, 1996, Plaintiff's premium for the policy was going to be increased to $1,052.22 every three (3) months. In an effort to keep her premium affordable, Plaintiff increased her deductible to $1,500.00, and her premiums changed to $773.76 every three (3) months.

12.    In or around August, 1997, Defendants increased the premium for Plaintiff's policy to $1,428.60 every three (3) months.

13.    In or around August, 1998, Plaintiff's premium for the policy was going to be increased to $1,762.14 every three (3) months. In an effort to to keep her policy in force, Plaintiff increased her deductible to $2,500.00, and the premiums for Plaintiff's policy changed to $1,578.54 every three (3) months.

-4-

14.     Plaintiff made her last premium payment of approximately $1,865.00 in 1999 and then was forced to drop her coverage.

15.     Defendants fraudulently induced Plaintiff to purchase said "group" health insurance policy, to pay said premiums, and to continue to pay said premiums by representing that the premiums charged were "group" premiums.

16.     Defendants fraudulently suppressed and concealed the actual basis for their premium increases, which was, among other things, to impose such a financial burden and strain upon Plaintiff as to force her to cancel said policies.

17.     Defendants owed Plaintiff an implied duty of good faith, fair dealing and honest disclosure in connection with the sale and performance of the "group" policies at issue and the premiums charged for said policies. Defendants breached such duties for their own financial gain.

18.     Defendants had vastly superior knowledge regarding the terms and conditions of said "group" policy and the underlying facts relating to the premiums charged for said policies; therefore, a special relationship existed between Plaintiff and Defendants as a result of Defendants' superior expertise and knowledge in such matters.

19.     The fraud and other wrongs perpetrated upon Plaintiff were of a continuing nature. Plaintiff did not discover Defendants' fraudulent conduct until May of 2003. It was not until May of 2003 that Plaintiff learned that the Defendants were calculating their enormous premium increases based upon factors other than bona fide group claims experience.

20.     The Defendants marketed, sold and serviced the "group" policy purchased by Plaintiff so as to actively conceal or suppress the true nature of the policy and how premium increases were calculated. At no time prior to May of 2003 was Plaintiff ever informed by

-5-

Defendants that the premium increases were based upon factors other than the group claims experience, nor was there anything in the insurance policies, premium increase letters, or the other documents provided to Plaintiff by Defendants that indicated this. At no time prior to May, 2003 was Plaintiff ever informed by Defendants that they had made the decision to cease marketing and selling this "group" health insurance policy, which in turn adversely affected the makeup of Plaintiff's group and caused it to begin a "downward spiral," and further caused Plaintiff's premiums to be increased by exorbitant and unreasonable amounts, nor was there anything in the insurance policies, premium increase letters, or the other documents provided to Plaintiff by Defendants that indicated this. And, at no time prior to May, 2003, Plaintiff had no reason to suspect that the premium increases were based upon factors other than the group claims experience, nor was there anything in the insurance policies, premium increase letters, or the other documents provided to Plaintiff by Defendants that indicated this. In fact, the documents provided to Plaintiff by Defendants indicated that the premium increases were based upon the "group" loss history, especially given the fact that the policy was marketed to Plaintiff as a "group" policy.

21.     Defendants Washington National and Conseco placed Plaintiff in, and required Plaintiff to join, as a condition of insurance, a group insurance trust called The Washington National Major Medical Trust. In doing so, Defendants created the illusion that Plaintiff was participating in true group insurance, where premiums are based upon the claims experience of the entire group.

22.     In addition to the false representations made by the Defendants that the insurance coverage provided by Washington National and Conseco was group insurance and that the premiums were calculated as such, the Defendants made false and/or misleading representations

-6-

to the Plaintiff during the application process. In particular, the Defendants represented that the Trustee, Trustmark, was independent and distinct from the insurer and that the Trustee operated an insurance program and selected the insurance policy as part of that program. These representations were, in fact, false and misleading in that the Trustee, Trustmark, did not administer any insurance program, and assigned all of its duties under the trust to Washington National, who was also a reinsurer for the risks under the policy so that there was no oversight or review by the Trustee.

23.    The representations described above provided the Plaintiff with a false sense of security by representing that Trustmark, as the Trustee of The Washington National Major Medical Trust, procured and purchased insurance coverage for and on behalf of the insureds. These representations were, in fact, false and misleading in that Defendant Trustmark did not actually procure any insurance for insureds such as the Plaintiff and in that Trustmark delegated its authority to do so to others who were adverse to the Plaintiff and the other insureds.

24.    The representations described above provided the Plaintiff with a false sense of security by representing that Trustmark, as Trustee of The Washington National Major Medical Trust, had delegated its authority to administer and manage the trust beneficiaries' insurance programs to Washington National. These representations indicated that Trustmark, as Trustee, retained direction, oversight and control over The Washington National Major Medical Trust insurance programs. Despite the fact that, as Trustee, Trustmark had a fiduciary duty to the insureds as trust beneficiaries to do each of these things, these representations were false and misleading in that:

-7-

    a.    Defendant Trustmark, despite its fiduciary duty to do so as a trustee, did not retain adequate authority, control, direction or oversight over The Washington National Major Medical Trust or the administrative and management activities of Defendant Washington National.

    b.    Defendant Trustmark did not disclose that the Trust Administrator was adverse to and did not represent the interests of applicants and insureds, such as Plaintiff, who participated in The Washington National Major Medical Trust.

    c.    Defendant Trustmark did not disclose the true facts as to its relationship with Washington National and Conseco.

### III.    LEGAL THEORIES

### FIRST CAUSE OF ACTION
### (FRAUD)

25.    Plaintiff readopts and realleges each and every allegation above the same as if fully set forth herein.

26.    Defendants had a duty to disclose to Plaintiff the truth concerning the premiums charged for the "group" coverages purchased and to disclose how the Defendants actually calculated such premiums.

27.    Defendants defrauded Plaintiff through the Defendants' intentional, willful, wanton, reckless and/or negligent misrepresentations and suppressions of material fact concerning the

premiums charged for the "group" coverages purchased and the increases in said premiums, which Plaintiff justifiably relied upon to his detriment.

28.    As a proximate result thereof, Plaintiff has suffered actual damages, including loss of money and mental anguish, and will suffer such damages in the future.

WHEREFORE, Plaintiff demands judgment against all the Defendants and seeks general compensatory damages and punitive damages in excess of the jurisdictional limits of this Court, plus costs.

## SECOND CAUSE OF ACTION
## (FRAUDULENT CONCEALMENT)

29.    Plaintiff readopts and realleges each and every allegation above the same as if fully set forth herein.

30.    In addition to making affirmative representations to Plaintiff, the Defendants wrongfully concealed and suppressed from Plaintiff the true nature of the pattern and practice in which the Defendants were engaged.    Further, the Defendants specifically concealed and suppressed from Plaintiff the wrongful acts and/or material facts described above.

31.    As a proximate result thereof, Plaintiff has suffered actual damages, including loss of money and mental anguish, and will suffer such damages in the future.

WHEREFORE, Plaintiff demands judgment against all the Defendants and seeks general compensatory damages and punitive damages in excess of the jurisdictional limits of this Court, plus costs.

## THIRD CAUSE OF ACTION
## (CONSPIRACY)

32.     Plaintiff readopts and realleges each and every allegation above the same as if fully set forth herein.

33.     Defendants conspired to mislead Plaintiff concerning the premium increases on the "group" policies sold to her by imposing improper and illegal premium increases on said policies and by suppressing and concealing the actual basis for their premium increases.  Defendants conspired to constructively cancel, by exorbitant premium increase, the policies of individuals such as Plaintiff, who made substantial claims or suffered from certain medical conditions, and to improve Defendants' profit margin on these policies.

34.     The acts of Defendants described above constitute the independent wrong of civil conspiracy under the laws of the State of Alabama.

35.     As a proximate result thereof, Plaintiff has suffered actual damages, including loss of money and mental anguish, and will suffer such damages in the future.

WHEREFORE, Plaintiff demands judgment against all the Defendants and seeks general compensatory damages and punitive damages in excess of the jurisdictional limits of this Court, plus costs.

## FOURTH CAUSE OF ACTION
## (BREACH OF FIDUCIARY DUTY)

36.     Plaintiff readopts and realleges each and every allegation above the same as if fully set forth herein.

37.    Defendants were in a position of trust and were in a superior bargaining position with respect to Plaintiff concerning the health insurance policies at issue. Defendants had superior knowledge regarding the terms and conditions of said policies and the actual basis for the premium increases imposed thereon; and as a result, Defendants had a fiduciary relationship to Plaintiff.

38.    Defendants Trustmark, A, B and C owed a further fiduciary duty to Plaintiff based upon these Defendants' status as trustee of The Washington National Major Medical Trust.

39.    Defendants had a duty to advise Plaintiff of the fact that Defendants increased the premiums due for said "group" policies based upon factors other than the group claims experience.

40.    Defendants owed a fiduciary duty to Plaintiff to disclose material facts and circumstances to them and to act in their best interest with regard to the calculation of premiums due for the "group" coverages purchased and to calculate the premiums in a fair and equitable manner consistent with the representations made by the Defendants to Plaintiff.

41.    Defendants breached their fiduciary duties to Plaintiff in that Defendants wrongfully failed to calculate the premiums on these insurance policies in a fair and equitable manner consistent with the representations made by the Defendants to Plaintiff and wrongfully failed to disclose that the increases in premiums due for said "group" policies were based on factors other than the group claims experience.

42.    As a proximate result thereof, Plaintiff has suffered actual damages, including loss of money and mental anguish, and will suffer such damages in the future.

WHEREFORE, Plaintiff demands judgment against all the Defendants and seeks general compensatory damages and punitive damages in excess of the jurisdictional limits of this Court, plus costs.

-11-

## FIFTH CAUSE OF ACTION
### (BREACH OF CONTRACT)

43.    Plaintiff readopts and realleges each and every allegation above the same as if fully set forth herein.

44.    Defendants Washington National, Conseco, Trustmark, A, B and C entered into a contract to provide "group" health insurance to Plaintiff in return for premiums quoted, and fairly and accurately computed, in accordance with the statements and representations made to Plaintiff by Defendants with respect to said "group" policy.

45.    The premiums actually charged to Plaintiff by these Defendants were substantially more than the amount of premiums due had those premiums been properly computed.

46.    Defendants Washington National, Conseco, Trustmark, A, B and C breached their contract with Plaintiff.

47.    As the proximate result thereof, Plaintiff has suffered actual damages, including loss of money and mental anguish, and will suffer such damages in the future.

WHEREFORE, Plaintiff demands judgment against Defendants Washington National, Conseco, Trustmark, A, B and C and seeks general compensatory damages in excess of the jurisdictional limits of this Court, plus costs.

-12-

OLEN, NICHOLAS & COPELAND P.C.
Post Office Box 1826
Mobile, Alabama  36633
(251) 438-6957
Attorneys for Plaintiff


_____
STEVE OLEN  (OLE001)


_____
S. RUSS COPELAND  (COP018)


_____
ROYCE A. RAY, III  (RAY017)


PLAINTIFF REQUESTS TRIAL BY JURY.

_____
STEVE OLEN


**THESE DEFENDANTS TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS:**

WASHINGTON NATIONAL INSURANCE COMPANY
303 North Main
Rockford, Illinois 61101

CONSECO SERVICES, L.L.C.
303 North Main
Rockford, Illinois  61101

TRUSTMARK NATIONAL BANK
Post Office Box 291
Jackson, Mississippi  39205-0291

-13-

**THIS DEFENDANT TO BE SERVED BY PRIVATE PROCESS SERVER:**

THOMAS B. HANEY, JR.
796 Meadow Lake Farms
Calera, Alabama  35040

-14-

# EXHIBITS TOO LARGE FOR

# SCANNING-SEE ORIGINAL

# FILE